# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-0832V
UNPUBLISHED

| | |
|---|---|
| KIMBERLY A. PURTILL,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Dated: November 12, 2019<br><br>Special Processing Unit (SPU); Motion to Dismiss; Six Month Residual Effects or Sequelae; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Robert Paul Coleman, III*, U.S. Department of Justice, Washington, DC, for Respondent.

**ORDER DENYING MOTION TO DISMISS AND FINDING OF FACT ON
SIX MONTH REQUIREMENT** [1]

On June 12, 2018, Kimberly Purtill filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*,[2] (the "Vaccine Act"). An amended petition was filed on July 31, 2018 (ECF No. 9). In it, Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of a September 30, 2015 influenza ("flu") vaccine. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Respondent has now filed a motion to dismiss the petition, alleging that Petitioner has failed to provide evidence to satisfy the six-month severity requirement set forth in Section 11(c)(1)(D)(i) of the Vaccine Act (ECF No. 25). For the reasons discussed below, Respondent's motion is denied.

## I.     Factual Background

On September 30, 2015, Ms. Purtill, then a 53-year old virtual critical care supervisor and registered nurse, received a flu vaccine intramuscularly into her left arm. Petitioner's Exhibit ("Pet. Ex.") 1 at 1; 3 at 8.  In her affidavit, Petitioner avers that she felt pain in her left shoulder "[i]mmediately after vaccination." Pet. Ex. 5 at 1 ¶ 3.  She averred that she expected the pain would go away but that instead it got worse. *Id.*

On October 21, 2015, Petitioner reported to an urgent care center operated by her employer, Carolinas Health System. Pet. Ex. 3 at 1.  Her chief complaint was that she had gotten a flu shot on September 30 and that her left shoulder joint was still "hurting a lot." *Id.*  She reported that she received her flu shot with a 20-gauge one inch needle in her left deltoid three weeks earlier. *Id.*  The evening of the flu shot, she noticed mild aching pain in her left shoulder, and the pain had progressed since then. *Id.*  She reported that the pain was worse with abduction and forward flexion of the left shoulder and was somewhat improved with Aleve. *Id.*  She denied a history of left shoulder pain. *Id.*  She was given prednisone. *Id.* at 2.

A Work Status/Treatment Report, also dated October 21, 2015, indicated that Petitioner's injury occurred on September 30, 2015. Pet. Ex. 2 at 1; 3 at 7.  A Radiology Interpretation Requisition from the same date indicates that Petitioner had normal left shoulder studies. Pet. Ex. 3 at 5.  The clinical indication for the studies was flu vaccine in Petitioner's left arm four weeks earlier and complaints of pain for four weeks. *Id.*

On November 16, 2015, Petitioner reported to Carolinas Healthcare System's Employee Health Division and was examined by Dr. Larry Raymond. Pet. Ex. 3 at 8.  She reported persisting and worsening left shoulder pain for six weeks due to a flu shot on September 30, 2015. *Id.*  She reported that both abduction and adduction were quite painful. *Id.*  She reported waking at night when she rolled over. *Id.*  She reported that a steroid taper had eliminated the radiating pain that was reaching her left elbow but that local deltoid pain and tenderness remained. *Id.*  Petitioner reported no prior left shoulder discomfort or similar reaction to a flu shot. *Id.*

On examination, Dr. Raymond found that Petitioner exhibited evidence of left rotator cuff tendinitis, left deltoid myositis, and focal tenderness to palpation. Pet. Ex. 3 at 8.  Dr. Raymond noted positive Neer's and empty can impingement signs, as well as other signs of rotator cuff tendinitis. *Id.*  Dr. Raymond assessed Petitioner with an "[a]dverse effect of influenza immunization with L deltoid myositis and brachial neuritis also involving rotator cuff (supraspinatus & infraspinatus)." *Id.*

Dr. Raymond prescribed a non-steroidal anti-inflammatory drug ("NSAID") and topical diclofenac gel. Pet. Ex. 3 at 8. He noted that Petitioner may need to be seen again in 1-2 weeks. *Id.*

On March 23, 2016, Petitioner reported to Dr. Raymond for a follow up examination. Pet. Ex. 3 at 9. The record noted that she had left shoulder pain after a flu shot in the fall and got "quite a lot of relief" from a prednisone taper. Pain donning her shirt or rolling over in her sleep "got up to 8/10." *Id.* The pain locations were recorded as "L retroclavicular, L forearm radiating up to shoulder, some L supraspinatus." *Id.* The note continues, "No (sic) pain is gone except occ. 2 of 10 in" left supraspinatus area donning shirt. *Id.* I interpret the "no" in this sentence as meaning "now." With this interpretation, the record indicates that as of March 23, 2016, Petitioner's pain was gone, *except* for occasional relatively minor pain while putting on a shirt.

On examination, Dr. Raymond noted "[n]o discomfort induced by 'JAMA 2014' maneuvers (painful arc and pressing dorsum of hands into thoracic spine). Pet. Ex. 3 at 9. Dr. Raymond summarized that, "[a]fter 4 months of pain, the steroid taper 40/day x 3 down to 5 mg/d over 10 days erased *most* of her pain." *Id.* (emphasis added). He indicated a reluctance to prescribe more prednisone and noted that Petitioner did not want that either. *Id.* Dr. Raymond's treatment plan noted that "shoulder rolls and other ROM exercises may help prolong her remission. If pain recurs, will refer her for PT." Pet. Ex. 3 at 9. He noted that he did not think that an orthopedic referral would help at this time. *Id.* At the bottom of the page, underneath Dr. Raymond's signature, there is a note stating, "Next seen @ Med OV for unrelated matter, 5/27/16, No mention of shoulder." *Id.*

In her supplemental affidavit, Petitioner averred that on March 23, 2016, she reported to Dr. Raymond "that following two courses of prednisone my left shoulder pain had mostly resolved, however, my range of motion was limited, my left arm strength was limited and I experienced increased pain with the use of my arm. I continued to take Aleve twice daily to control my symptoms, in addition to heat or ice and use of an over the counter TENS unit (transcutaneous electrical nerve stimulation)." Pet. Ex. 7 at ¶ 7. Petitioner reported that Dr. Raymond instructed her to perform home exercises and return if her pain increased. *Id.* at ¶ 8. Petitioner averred that she "did not return to Dr. Raymond as my pain leveled off, and I did not believe that anything further could be done to treat my left shoulder pain." *Id.* at ¶ 9.

On May 27, 2016, Petitioner was seen by physician assistant Timothy Kelley. Pet. Ex. 4 at 129. She reported that she would like to discontinue an anxiety/depression medication secondary to possible gastrointestinal issues. *Id.* There is no indication at this time that she reported shoulder pain, and no musculoskeletal examination was recorded. *Id.* at 129-146.

On September 2, 2016, Petitioner was seen by physician assistant Timothy Kelley for anxiety. Pet. Ex. 4 at 61. There is again no indication that she reported shoulder pain,

3

and no musculoskeletal examination was recorded.  *Id.* at 61-78.  The page following this record is an undated request for medical exemption from the influenza vaccination for 2016-2017 indicating that Petitioner had "a contraindication that warrant[ed] a medical exemption from the influenza vaccine."  Pet. Ex. 4 at 65.  The form is signed by physician assistant Kelley.  *Id.*

On October 31, 2016, Petitioner reported to Dr. Grant Campbell for an annual well women examination.  Pet. Ex. 6 at 7.  There is no indication that she reported shoulder pain.  *Id.* at 7-23.  In the musculoskeletal section of the review of systems, the record states "Negative."  Pet. Ex. 6 at 7.  In the physical examination section, the record states, "Normal range of motion, No deformity."  *Id.*

On November 29, 2016, Petitioner reported to Dr. Timothy Hodges complaining of bilateral scapular pain, bilateral flank pain, and intractable headache.  Pet. Ex. 4 at 80.  Petitioner reported bilateral scapular pain and flank pain since November 1, 2016.  *Id.*  The scapular tenderness was not made worse by flexion, extension, or lateral rotation, and was worst when she was recumbent lying in bed.  *Id.*  On examination, she was found to have "[b]ilateral trapezius spasm with palpable tenderness."  *Id.* at 82.  She was diagnosed with chronic scapular pain and instructed to follow up in one to two weeks.  *Id.*

Chest radiology studies were done and found to be normal on November 29, 2016.  Pet. Ex. 4 at 95.  The testing was done due to "upper back pain for about 1 month."  *Id.*  Petitioner was excused from work for the day.  *Id.* at 113.

In her supplemental affidavit, Petitioner stated, "I did discuss my ongoing left shoulder pain with my primary care physician at routine visits."  Pet. Ex. 7 at ¶ 9.  She does not provide dates of these discussions and does not indicate the nature and resolution of the discussions.  The only primary care record that refers to shoulder pain is the November 29, 2016 visit with Dr. Hodges for bilateral scapular pain, Pet. Ex. 4 at 80.

## II.     Relevant Procedural History

Petitioner filed with her petition medical records and an affidavit as Pet. Exs. 1-5 (ECF No. 1) and filed a Statement of Completion on June 14, 2018 (ECF No. 5).  Following the initial status conference on July 23, 2018, Petitioner was directed to file additional medical records (ECF No. 8).  On July 31, 2018, Petitioner filed an amended petition, additional medical records, and a Statement of Completion (ECF Nos. 9-11).

On April 8, 2019, Respondent filed a status report stating that he had requested from Petitioner that she file proof that she satisfied the six-month severity requirement to demonstrate entitlement to compensation (ECF No. 19).  On April 23, 2019, Petitioner was directed to file evidence demonstrating that she suffered the effects of her injury for at least six months and an amended Statement of Completion (ECF No. 20).  On the

same day, April 23, 2019, Petitioner filed an amended Statement of Completion (ECF No. 21). Petitioner stated:

> On March 23, 2016, five (5) months and twenty-three (23) days following receipt of the influenza vaccine, Petitioner returned to Dr. Raymond with ongoing left shoulder pain. At that time, she reported, "Pain donning shirt or rolling over in sleep got up to an 8/10." At that time Dr. Raymond recommended home-exercises.
>
> There are no additional medical records.

Petitioner's Amended Statement of Completion, filed April 23, 2019 (ECF No. 21).

On July 31, 2019, Respondent filed a Rule 4(c) report and motion to dismiss (ECF Nos. 24, 25). Respondent argued that Petitioner was not entitled to compensation because she had not satisfied the six month severity requirement. Rule 4(c) report at 4. Respondent stated that although Petitioner attended medical appointments outside of the six-month timeframe, "at none of those visits did she mention any left shoulder complaints. *See* Ex. 4 at 80-86, 95-96, 109, 115-119, 129-131." *Id.* at 4-5. Respondent further noted that at Petitioner's March 23, 2016 visit, Dr. Raymond "indicated that petitioner's condition was much improved and that she did not require any additional medication." *Id.* at 5 (citing Pet. Ex. 3 at 9). Thus, Respondent asserted that there was an "absence of any objective contemporaneous evidence that petitioner suffered from left shoulder pain more than six months after the September 30. 2015 vaccine was administered" and thus had failed to demonstrate entitlement to compensation. *Id.* at 5. Thus, Respondent argued that the petition should be dismissed. *Id.*

On August 16, 2019, Petitioner filed a supplemental affidavit, Pet. Ex. 7, and a response opposing the motion to dismiss (ECF Nos. 27, 28). Petitioner argued that respondent's motion to dismiss should be denied because "the evidence submitted demonstrates by preponderant evidence that her left shoulder injuries continued through March 30, 2016." Petitioner's Response at 1. Petitioner asserted that pursuant to Court of Federal Claims Rule 56(a) and Vaccine Rule 8(d), the court should enter judgment in favor of a moving party if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 3. Petitioner argued, "[d]ismissal is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury." *Id.* at 4.

Petitioner asserted that her medical records and affidavits established that it was more likely than not that she suffered the residual effects of her left shoulder injury for at least six months after her flu shot. Petitioner's Response at 4. Petitioner argued that residual effects are "symptoms manifested due to the vaccine related injury" and that

5

"[d]ischarge from medical care does not necessarily indicate there are no residual effects." *Id.*

Petitioner argued that her medical records reflected that on March 23, 2016, five months and 24 days following her vaccination, she reported that a steroid taper "erased . . . **most** of her [left shoulder] pain." Petitioner's Response at 5 (emphasis in original). Petitioner argued that in this context, the use of the term "most" implied that not all of her left shoulder pain had resolved. *Id.* Petitioner asserted that her affidavit corroborates this, indicating that while a second taper of steroids improved her symptoms, she still had limited range of motion and weakness in her left shoulder. *Id.* Petitioner acknowledged that her medical records did not corroborate all of her symptoms, but Dr. Raymond's records noted some residual symptoms of her left shoulder pain. *Id.* Petitioner argued that her affidavit, as supported by her medical records, demonstrated by preponderant evidence that she suffered the residual effects of her injury for at least six months. *Id.*

### III. Relevant Legal Standards

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Vaccine Act § 11(c)(1)(D)(i). The burden of establishing, by a preponderance of the evidence, the persistence of a vaccine-caused injury for longer than six months is borne by Petitioner. Vaccine Act § 13(a)(1)(A); *Song v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). A Petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. Vaccine Act § 13(a)(1)(A).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of Petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### IV. Analysis

The purpose of the Vaccine Act is to award "vaccine-injured persons quickly, easily, and with certainty and generosity." *Weddel v. Sec'y of Health & Human Servs.*, 100 F. 3d 929, 932 (Fed. Cir. 1996) (*quoting* H.R. Rep. No. 99-908, at 3 (1986)). The Act was meant to remedy the problem that "for the relatively few who are injured by vaccines – through no fault of their own – the opportunities for redress and restitution [were] limited,

time consuming, expensive, and often unanswered." *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011) (en banc) (*quoting* H.R. Rep. No. 99-908, at 6 (1986)). As a result, the program places some emphasis on speed and efficiency, especially in close cases.

The Vaccine Act requires that a Petitioner demonstrate that "residual effects or complications" of a vaccine related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). "[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). In another SPU case, where a Petitioner's last treatment was at five months and nine days, the Petitioner was found to meet the six month requirement. *Schafer v. Sec'y of Health & Human Servs.*, No. 16-0593V, 2019 WL 5849524 (Fed. Cl. Spec. Mstr. Aug. 28, 2019). In that case, the special master noted that it was unlikely "that petitioner's shoulder symptoms would have resolved within 22 days." *Id.* at *7.

In this case, it is undisputed that Petitioner received a flu vaccination on September 30, 2015 in her left deltoid. The parties have not raised any dispute concerning the onset of Petitioner's left shoulder pain and there is preponderant evidence that the onset of her pain was immediate. The parties have not disputed that Petitioner was seen by Dr. Raymond on March 23, 2016, seven days short of the six-month period. In order for Petitioner to establish more than six months of residual effects, she must demonstrate that her residual symptoms continued until at least one week after her March 23, 2016 appointment with Dr. Raymond.

Respondent emphasizes that at the March 23, 2016 appointment Petitioner's condition was greatly improved and that medication was no longer needed. Rule 4(c) report at 5. Petitioner, however, focuses on Dr. Raymond's note indicating that *most*, and thus by implication, not *all*, of Petitioner's pain was erased by the steroid taper.

The most persuasive evidence concerning Petitioner's condition on March 23, 2016 is Dr. Raymond's note that Petitioner's "pain [was] gone *except occ. 2 of 10 . . . donning shirt*." Pet. Ex. 3 at 9 (emphasis added). This implication of this is that Petitioner's pain was not completely gone, since she was still experiencing occasional pain getting dressed as of March 23, 2016. This is supported by the note cited by Petitioner indicating that *most* of her pain was erased by the steroid taper. Pet. Ex. 3 at 9. This is further supported by Petitioner's statement in her supplemental affidavit that she reported on March 23, 2016, that her left shoulder pain had mostly resolved and that she experienced increased pain with the use of her arm. Pet. Ex. 7 at ¶ 7.

Moreover, eight months later, on November 29, 2016, she was seen by her primary care physician for bilateral scapular pain. Pet. Ex. 4 at 80. Petitioner's November 29,

7

2016 appointment for shoulder pain further suggests that she continued to suffer lingering effects of her injury in the interim period.

Petitioner has further explained why she did not return to Dr. Raymond after the March 23, 2016 visit – her pain had leveled off (even if some remained) and she did not think any further treatment was available. *Id.* at ¶ 9. This is consistent with Dr. Raymond's reluctance to prescribe further treatment on March 23, 2016, when he indicated he did not want to prescribe more prednisone, did not think an orthopedic referral would help, and suggested that she continue home exercises. Pet. Ex. 3 at 9.

Taken as a whole, this evidence supports a finding that as of March 23, 2016, Petitioner was still experiencing occasional and minimal residual symptoms, including left shoulder pain while getting dressed. Her treating physician considered further treatment options but determined that further treatment was not warranted at that time.

Thus, I find it more likely than not that a shoulder injury that was still causing occasional pain after five months and twenty-three days (which is 175 days) would not fully resolve within the following week. Therefore, I find it more likely than not that Petitioner suffered the residual effects of her left shoulder injury for more than six months (if barely). I do not make this finding based solely on Petitioner's assertions, but also on corroborating medical records, specifically the record of her March 23, 2016 visit with Dr. Raymond, Pet. Ex. 3 at 9, and the record of her November 29, 2016 appointment, Pet. Ex. 4 at 80. Taken as a whole, the record establishes that she suffered the residual effects of her injury for more than six months.

This is a close case. The evidence supporting residual effects for more than six months barely tips in Petitioner's favor. However, "[i]n the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013).

V. **Conclusion**

**For the reasons stated above, I DENY respondent's motion. I find, based on the record as a whole, that Petitioner has established that she suffered the residual effects of her vaccine-related injury for at least six months.**

**Respondent shall file, by no later than Thursday, December 12, 2019, a status report indicating how he intends to proceed in this case in light of this decision.**

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
