# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0832V
UNPUBLISHED

|  |  |
|---|---|
| KIMBERLY A. PURTILL,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: May 7, 2020<br><br>Special Processing Unit (SPU);<br>Ruling on Entitlement; Table Injury;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Robert Paul Coleman, III*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON ENTITLEMENT[1]

On June 12, 2018, Kimberly A. Purtill filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September 30, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

On July 31, 2019, Respondent filed his Rule 4(c) Report (ECF No. 24) and a motion to dismiss (ECF No. 25). Respondent requested dismissal based upon the contention that Petitioner had failed "to provide evidence to satisfy the six-month severity requirement provided by Section 11(c)(1)(D)(i) of the Vaccine Act." Motion to Dismiss at

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

*1. Although Petitioner had alleged that her injuries lasted more than six months, she "included no citation for this statement." Rule 4(c) Report at *4. Respondent conceded that Petitioner had attended appointments with medical providers outside of the six-month timeframe, but asserted that "at none of those visits did she mention any left shoulder complaints." *Id.* at *4-5. In addition, at Petitioner's last visit for shoulder pain just short of six months after her injury, her doctor "indicated that petitioner's condition was much improved and that she did not require any additional medication." *Id.* at *5. Accordingly, Respondent argued that there was no objective contemporaneous evidence that Petitioner had suffered from left shoulder pain for more than six months. *Id.* Respondent raised no other challenges to Petitioner's success in establishing a Table SIRVA claim.

On November 12, 2019, I issued an order denying Respondent's motion to dismiss, and making a factual finding that Petitioner had satisfied the six-month requirement. Order Denying Motion to Dismiss and Finding of Fact on Six Month Requirement, issued Nov. 12, 2019 (ECF No. 31). I found that the evidence showed that Petitioner was seen by her doctor seven days short of the end of the six-month period, and that at this appointment the record indicated that *most* of Petitioner's pain was gone – allowing the inference that it was not *completely* gone. *Id.* at *7. I found that more likely than not, her injury did not fully resolve within the following week. *Id.* at *7-8. On this basis, and while it was a close case, I found that Petitioner had established that she had suffered the residual effects of her injury for more than six months. *Id.* at *8.

Respondent was then directed to file a status report indicating how he intended to proceed. *Id.* at *8. On December 12, 2019, Respondent filed a status report stating that he intended to continue to defend this case, but not identifying any reasons why I should not find that Petitioner is entitled to compensation. Respondent's Status Report, filed Dec. 12, 2019 (ECF No. 33).

On February 6, 2020, a telephonic conference was held to discuss the matter's status. Following the status conference, Respondent was directed to file either an amended Rule 4(c) Report or general status report indicating how Respondent wished to proceed. Scheduling Order, issued Feb. 6, 2020 (ECF No. 37). On February 20, 2020, Respondent filed a status report stating that he did "not have anything to add to his previously filed Rule 4(c) Report." Respondent's Status Report, filed Feb. 20, 2020 (ECF No. 38).

In this case, Respondent's sole objection involved whether Petitioner had provided sufficient evidence to meet the six month requirement. While this was a close case, I ruled in Petitioner's favor on this issue. No other issues related to entitlement have been raised. After a review of the entire record, I find that Petitioner is entitled to compensation.

**I.     Factual Findings and Ruling on Entitlement**

   **A.  Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. § 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction.

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms. *See* Ex. 7 at ¶ 4; Ex. 4.

#### 2. Onset of Pain

Pursuant to Section 13(b)(2) of the Vaccine Act, a special master may find that the first symptom or manifestation of onset occurred within the time period set forth in the Table even if the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period.

In my November 12, 2019 Order, I determined that the onset of petitioner's left shoulder injuries occurred immediately after her September 30, 2015 influenza vaccination based on medical records and petitioner's testimony and affidavit. Order on

4

Motion to Dismiss and Finding of Fact, issued Nov. 12, 2019, at *7 (ECF No. 31); *see also* Ex. 2 at 1-2 (listing date of injury as 9/30/15 and stating the reason for visit as "got a flu shot on Sept 30th, still left shoulder [joint] is hurting a lot"); Ex. 3 at 1(noting that Petitioner complained of "continued left shoulder aching pain for the past 3 weeks. Patient states she [received] her flu shot in her left deltoid 3 weeks ago . . . that evening she started noticing mild aching pain in the left shoulder and states pain has progressed since."). Thus, petitioner has demonstrated by a preponderance of the evidence that her injury occurred within 48 hours, the time specified in the Table for a SIRVA.

### 3. Scope of Pain and Limited ROM

Respondent has not contested that Petitioner meets this criterion. In addition, the medical records document symptoms only in Petitioner's left shoulder following her vaccine.[4] Ex. 2 at 1, 2. I thus find that Petitioner has demonstrated by a preponderance of the evidence that her pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). There is no evidence that Petitioner suffered any other condition which would explain her symptoms of pain and limited ROM in her left shoulder. Nor has Respondent identified any such other condition or abnormality.

I find the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's left shoulder injury.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received the flu vaccine intramuscularly in her left arm on September 30, 2015 at a health clinic located in Charlotte, North Carolina. Ex. 1 at 1; Ex. 5 at ¶ 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 5 at ¶ 6; Section 11(c)(1)(E) (lack of prior civil award).

---

[4] I am aware that Petitioner suffered from bilateral scapular pain over a year after vaccination. Ex. 4 at 80. On examination, she was found to have bilateral "trapezius spasm with palpable tenderness." *Id.* at 82. This does not outweigh the remaining extensive evidence of symptoms only in Petitioner's left shoulder following vaccination.

5

As stated in the previous section, I have found that the onset of Petitioner's left shoulder pain was immediate and thus, within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). But in my November 12, 2019 Order and Fact Ruling, I found that Petitioner had established that she suffered the residual effects of her injury for more than six months. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

**In view of Respondent's position and the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran  
Brian H. Corcoran  
Chief Special Master